**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Inacio Da Costa-Joao, | No. CV-26-00715-PHX-DWL (MTM) |
| Petitioner, | **ORDER** |
| v. | |
| Christopher McGregor, et al., | |
| Respondents. | |

In this habeas corpus action under 28 U.S.C. § 2241, Petitioner—who was detained by federal immigration authorities on January 20, 2026 and subjected to mandatory detention—alleged that he was entitled to a bond hearing. (Doc. 1.)  In a February 5, 2026 order, the Court agreed and ordered Respondents to "provide Petitioner a bond redetermination hearing within seven days or release Petitioner from custody under the same conditions that existed before detention."  (Doc. 9.)  On February 12, 2026, Respondents filed a "Notice of Compliance" indicating that Petitioner had received a bond redetermination hearing that same day.  (Doc. 11.)

On March 25, 2026, Petitioner filed a "motion to enforce Court's February 5, 2026 order."  (Doc. 12.)  The materials attached to Petitioner's motion reveal that Petitioner received a bond hearing on February 12, 2026 but the immigration judge ("IJ") denied relief on the ground that Petitioner "did not meet his burden to show that there is an amount of money in bond to ensure appearance at future court hearings." (Doc. 12-2 at 3.)  The enclosed materials further reveal that on March 10, 2026, Petitioner filed a motion for

redetermination based on changed circumstances (*id.* at 16-24), but on March 17, 2026, the IJ denied the motion on the ground that Petitioner "did not show the Court materially changed circumstances since the custody redetermination hearing." (*Id.* at 27-28.)

Petitioner contends the bond hearing he received on February 12, 2026 did not qualify as "a full and fair opportunity . . . to seek release on bond" because on February 11, 2026—only one day before the hearing—DHS disclosed, for the first time, the existence of "9 ATD violations." (Doc. 12.) As background, "ATD" refers to DHS's "Alternatives to Detention" program. (Doc. 12-2 at 11 ¶ 1.) In a declaration, Petitioner explains that he was initially detained in August 2024; was subsequently released from custody pursuant to the ATD program; and was required, as part of the ATD program, to wear an ankle monitor, keep the monitor charged, attend certain in-person and telephonic check-ins, and periodically send photos of himself through an application on his phone. (*Id.* at 11-13.) The materials submitted by Petitioner do not reveal the precise nature of the alleged ATD violations at issue here, but Petitioner acknowledges in his declaration that "[t]here were a few times when there were malfunctions with the tracker," including when "one time it died when [he] was out volunteering, despite being completely charged when [he] left home"; that he also "accidentally missed" calls from his "case officer" on "maybe two instances"; and that he separately found the "telephonic and photo check ins" to be "challenging" because they "require[] a telephone," yet "there were two or three times when [he] could not pay and [his] phone was disconnected. This meant it was impossible for [him] to take a photo for ICE or answer a phone call." (*Id.* at 11-12 ¶¶ 3, 7-9.) Although no transcript of the February 12, 2026 bond hearing has been provided, Petitioner's counsel previously asserted that the IJ "primarily relied" on the existence of the ATD violations as the basis for deeming Petitioner a flight risk, albeit while "also express[ing] concern with . . . the lack of familial tie between the Sponsor and [Petitioner]." (*Id.* at 17-18 ¶¶ 6, 10.)

Petitioner's overarching argument is that "[a]lthough Respondents ostensibly provided Petitioner a bond hearing, the hearing did not comport with the basic requirements of due process, and was not, in fact, a bond hearing in the proper sense of the word." (Doc.

12 at 9.) Petitioner questions "the constitutionality and sufficiency of the process by which his bond determination was adjudicated" and argues that relief is necessary both "to vindicate this Court's authority" and to promote the public's interest in ensuring that "government agencies comply with court orders." (*Id.* at 9-13, capitalization omitted.) In response, Respondents contend that "the Immigration Judge conducted a bond redetermination hearing within the required time period. It is thus an undisputed fact that Respondents have complied in full with the Court's order. There is nothing left for this Court to enforce. Petitioner's legal arguments concerning the sufficiency and outcome of the bond proceedings, which challenge the adequacy of those proceedings, cannot be raised anew within the context of a motion to enforce and fall outside the scope of the Court's order." (Doc. 13 at 1-2.) Respondents further contend that, under 8 U.S.C. § 1226(e), the Court lacks jurisdiction to review IJs' decisions in bond hearings. (*Id.* at 2.) The time for Petitioner to file a reply has expired and Petitioner did not file a reply.

The Court concludes that Petitioner is not entitled to relief. It must not be overlooked that this is a habeas corpus action in which Petitioner did not seek his outright release from custody—instead, Petitioner simply argued he was entitled to a bond hearing. The Court agreed, ordering that Petitioner receive a bond hearing by February 12, 2026, and it is undisputed that Petitioner received a bond hearing by that deadline. Although Petitioner now seeks to raise challenges to the outcome of the bond hearing and how that hearing was conducted, these are challenges Petitioner could have raised via a request for review by the BIA.

In an effort to bypass that review process, Petitioner invokes the courts' inherent and statutory authority to "enforce" their own orders, as well as the courts' ability to "exercise[] contempt power to compel action by and punish government agencies and officials responsible for carrying out government actions." (Doc. 12 at 5-7.) But even assuming that a different habeas petitioner might be able to show, under a different set of facts, that a court-ordered bond hearing was infected by flaws that trigger a need for relief from the habeas court that ordered the bond hearing in the first place, Petitioner has not

established he is entitled to such relief here. Although Petitioner takes issue with the fact that the alleged ATD violations were not disclosed to him until the day before the bond hearing, Petitioner does not contend—and the record does not indicate—that Petitioner sought (let alone was denied) a continuance so that he could conduct further investigation or otherwise be prepared to address the ATD issue at the hearing. Next, although Petitioner emphasizes his diligence in attempting to comply with his ATD requirements, it appears undisputed that at least some violations occurred. (Doc. 12-2 at 11-12 ¶¶ 3, 7-9.) The IJ was in the best position to determine whether those violations were innocent and/or the product of technological errors, as Petitioner contends, or whether they were indicative of a risk of flight. Additionally, the IJ apparently expressed concern about the lack of a familial relationship between Petitioner and his sponsor, which has no connection to the alleged ATD violations. Thus, even though § 1226(e) may not preclude judicial review of at least some aspects of the IJ's bond determination,[1] Petitioner has not established an entitlement to relief here—particularly on this limited record, Petitioner has not shown that the evidence before the IJ failed, as a matter of law, to prove flight risk. Finally, to the extent Petitioner contends that the denial of bond in his case was part of a larger pattern of IJs improperly refusing to grant relief in bond hearings ordered by habeas courts (Doc. 12 at 10-12), this contention is not consistent with the Court's experience—the Court has ordered many bond hearings in recent months, and the notices of compliance filed in those cases frequently indicate that the petitioner was released on bond following the hearing.

…

…

---

[1]   *See, e.g., Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("Although § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law. . . . [A]lthough the Attorney General's discretionary judgment . . . shall not be subject to review, claims that the discretionary process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241.") (cleaned up); *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 960-61 (N.D. Cal. 2019) ("Pursuant to § 1226(e), discretionary decisions granting or denying bond are not subject to judicial review. Accordingly, where a habeas petitioner asks the Court to second-guess the IJ's weighing of the evidence, that claim is directed solely to the IJ's discretion and is unreviewable. But § 1226(e) does not bar courts from concluding that the evidence before the IJ failed, as a matter of law, to prove flight risk or danger.") (cleaned up).

Accordingly,

**IT IS ORDERED** that Petitioner's motion to enforce (Doc. 12) is **denied**.

Dated this 16th day of April, 2026.

_____
Dominic W. Lanza
United States District Judge

- 5 -